Kirkpatrick, C. J.
— I have looked into this case.[*] Here are two judgments against the same man, and an execution upon each. The sheriff, who is the defendant in this suit, has sold the property, and the imoceeds thereof, not being sufficient to satisfy both, the question is as to the priority of the executions, and who shall be first paid. The execution taken out by the administrators of Harris, was first delivered to the sheriff, but was not recorded. Can it prevail against the subsequent execution regularly sued out and recorded, before it came to the sheriff’s hand? I think it cannot. The act, Paterson 370, is, in my construction of it, decisive.
*139 This settling the question, I say nothing as to the other points stated.
I think there must be judgment for the plaintiff.
Rossell, J.
— Said that his opinion was, that the action would not lie against the sheriff, but as it was conceded that It was by consent, he concurred in opinion with the Chief Justice.
Pennington, J.
— One question for the determination of this Court is, the priority of two executions put into the hands of the defendant, while sheriff of Cumberland; one in favor of the plaintiff — and the other in favor of the administrators of James Harris, deceased. The execution of the administrators of Harris, was delivered to the sheriff, prior to that of the plaintiff’s ; and under our act of Assembly, Fat. 369, executions against either goods or lands, are to have preference, according to the time they are delivered to the sheriff; prima facie, then, the administrators’ execution must have preference. In opposition to this, the plaintiff contends, that the judgment in favor of the administrators being entered upon a warrant of attorney, in virtue of the act of Assembly, Fat. 454 ; the directions of that act not being strictly pursued, the judgment is void. Another point of a similar nature, is also raised by the plaintiff: — That the execution was issued for a less sum than the judgment. I am decidedly of opinion, [*] that there is nothing in either of these objections. It appears to me, that there is a mistaken notion gaining ground in some parts of the state, with respect to the responsibility of sheriffs, for the soundness of judgments on which executions in their hands, are issued. The question is not whether the judgment and execution issued thereon is regular, but whether there was such a judgment and execution, as would justify the sheriff in executing the writ. This is not an action against the administrators of Harris, but against the sheriff; and the true inquiry I take to be, is the sheriff, under the circumstances of the case, bound to satisfy the execution of the administrators of Harris, there being an irregularity in entering the judgment, and in issuing the execution. The judgment and execution, however, remaining unimpeached in the Common Pleas, what answer can the sheriff make to the administrators of Harris? Can he tell the court, tiiat he considers the judgment irregular, or that the execution was unskilfully or improperly issued, and therefore, he will not execute the writ? I apprehend not.(a) If then, he is bound *140 to pay the money over to the administrators of Harris, can the plaintiff recover the same money of him? This would be a reflection on our law, that I think it does not merit.
Another objection is raised by the- plaintiff, which is attended witli more difficulty. It appears, that the execution of the administrators of Harris, which is as well against land as goods, was not recorded before it was delivered to the sheriff. It is thereupon contended, on the part of the plaintiff, that the execution is void, both as against the land and also against the goods, or at least that it ought to be postponed to his execution, that being duly recorded (a) — and that too, previous to the recording the execution of the administrators of Harris, which.it seems, was done after the return of the writ. The notion of postponement must arise from an idea that the recording is intended as notice to purchasers. This is not so. No such design [*] can be discovered in the law. But thereat object that the Legislature'had in View, has created a difficulty in my mind. The reason why the law requires the recording of the execution in.the case of real estate, is, that the execution in the case of the sale of real property by the sheriff, is a necessary link in the chain of title — the execution is liable to be embezzled or lost; and in case the debt is wholly satisfied, it is not even necessary to be returned. Therefore, for the security of purchasers, and the preservation of titles to real estates, the Legislature, in the act authorizing the sale of real "estate for the payment of debts, hath declared, that every writ of execution, for the sale of real estate shall, before it be delivered to the sheriff, be recorded by the clerk, &c. The law directing the recording the execution against real property, does not owe its origin to the present law on this subject, passed in 1799, but is to be traced back to the year 1743, and is coeval with the law authorizing the sale of real estate for the payment of debts. In the act directing the same, not only the uncertainty and precariousneSs of the title is assigned as a reason, but the ill consequences of this uncertainty and precarious situation of the title to defendants, whose lands should be exposed to sale, by selling them at an under rate. (b) A question now arises On the construction of this act: whether it is to be considered merely as directory to the officer, and the omission not to vitiate the proceedings, or an essential act, indispensibly necessary to be performed, in order to give validity to the writ, creating an authority to levy on and sell land. This is to me an entire new case; and I must confess that my mind hath been *141 very much balanced on the question, or rather hath vibrated between two opinions. On the best consideration which I have been able to give the subject, I incline to think that the recording the execution before it is delivered to the sheriff, is an essential aetto be performed — and that without it, there is no authority to levy on, and sell the land of the defendant. It appears to me, that the intention of the Legislature cannot bo [*] carried into effect by any other construction. I look upon the recording this writ after it was returned, as nothing. In case the writ should be lost or embezzled, the record thereof, cannot be given in evidence; the provision in the statute authorizing it only in cases where the direction of the act is followed: the language of which is, “and the record of such writ, so made, shall be as good evidence as the writ itself.” The words so made, refer to the antecedent directions for recording the execution before it is delivered to the sheriff — and should be read thus : — The record of a writ, recorded before it is delivered to the sheriff, shall be as good evidence as the writ itself. If that is so, the subsequent recording of the execution is of no avail. Indeed the reason and propriety of the thing, shews why it should be so. The writ may be lost, mislaid, or embezzled — title to land, sold under public authority, should not depend merely on the punctuality and circumspection of a public officer, much less upon the whim or caprice of a sheriff, his deputy, or other inferior officer. The language of the 14th section of the act which protects purchasers against reversals of judgments, making the recording the execution an essential ingredient in such case, shews more fully the design and intention of the Legislature, as to the necessity of recording the execution. There appears to me an important difference between acts required to be done in a course of practice, and which are merely of that nature, and substantial acts giving operation to a new law, essentially required to be done for the security of property. The first are merely directory ; and their omissions and irregularities, to be taken advantage of as the cause progresses, and cured by subsequent acts of the adverse party. The last, positive regulations ; and their omission, fatal errors, not to be cured by subsequent acts, but void from the beginning. It appears to me, that the recording of the execution against real estate, called for by our act of Assembly, is of the latter class. A writ of execution adapted in its origin to operate on goods and chattels only, is extended to [*] lands. The preservation of this writ is indispensably necessary for the security of title; and is, by the same law which authorizes the sale of land, positively ordered to be recorded, before it can have *142 any legal effect: that is, beforeit is delivered to the sheriff; and it must he considered void as to land, if it is omitted to be done.
I am, however, of opinion, that although the execution is not good as to the land, yet that it is good as to goods and chattels. The cases of Elegits, urged on the part of the plaintiff, does not from the different nature of the writs, apply to the case. Nor can I perceive what the mortgage of the representatives of James Harris, lias to do in the case. The duty of the sheriff was to sell all the right of the defendant. The mortgage is not made better or worse by the sale. That the purchaser hath a prior lien on the land, is a thing wholly unconnected with the disposition of the purchase money. The question, whether, under our law, the sheriff can sell the equity of redemption, does not arise in this cause. He hath sold all the. right and title of the defendant whatever it is; and the.question is, who is entitled to the money arising on the sale — and not who shall have the land.
On the whole, I am opinion, that the personal estate, and no more, be first applied in part satisfaction of the execution of the administrators of James Harris, deceased, and of course under the state of the case, that judgment be rendered in favour of the plaintiff for §661 IT, with costs. This sum being agreed to by the parties, according to the second question submitted.
Judgment for the plaintiff for §661 17, with cost of suit.

 Vide 1 Sellen, 519. Officer cannot question an execution, but must make return. “

 Vide 3 Halst. 282. — Ed.

 Vide 1 Nevill, 279. — Ed,